# INGA KEEGAN v. G. HEILEMAN BREWING COMPANY.[1]

June 4, 1915.

Nos. 19,255—(165).

**Lease — covenant to keep in repair.**
    1. Where a lessor by his lease contracts to keep the leased premises in

[1] Reported in 152 N. W. 877.

---

Note.—The authorities passing upon the liability of a landlord for injury to tenants from defects in the premises are presented in the notes in 34 L.R.A. 824; 34 L.R.A.(N.S.) 798, and 48 L.R.A.(N.S.) 917.

repair, and he negligently fails to do so, he is liable to the lessee and to members of his family occupying the same for personal injuries received from a defective condition of the premises; but neither a stipulation in the lease that the lessee may make alterations at his own expense with the consent of the lessor, nor a provision that the lessor may enter and make repairs, will impose upon the lessor an obligation to keep the premises in repair.

### Duty of landlord in case of hidden danger.

2. When the lessor does not agree to repair, and there is no fraud or concealment as to the safe condition of the premises, and the situation is not such as to create a nuisance, the lessee takes the risk of their safe occupancy. But if there is a concealed trap or danger on the premises at the time of the leasing and its existence is not obvious, but is known to the lessor and unknown to the lessee, the lessor is in duty bound to disclose it, and he is liable for negligent failure to do so, even though he makes no contract to repair.

### Assignment of lease immaterial.

3. It is not important whether plaintiff, injured by defective condition of leased premises used as a restaurant and dwelling, was an assignee of the lease or the wife of the lessee; her rights in either case are substantially the same.

### Voidable assignment of lease.

4. An assignment contrary to the terms of the lease does not *ipso facto* terminate the lease, but merely gives the lessor an option to do so.

### Liability of landlord not affected by assignment.

5. An assignment assented to by the lessor is not a new leasing. The rights of the parties so far as concerns liability for dangerous conditions of the premises are determined as of the time of the original leasing, and not as of the time of the assignment.

Action in the district court for Yellow Medicine county to recover $2,999 for personal injury caused by the defective condition of defendant's premises. The case was tried before Powers, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony defendant's motion for a directed verdict, and a jury which returned a verdict for $2,000.

As to right of tenant to recover for personal injuries received through breach of landlord's contract to repair, see note in 11 L.R.A.(N.S.) 504.

As to liability of landlord to tenants' guests and servants from defects in premises, see notes in 34 L.R.A. 609, 46 L.R.A. 86, and 17 L.R.A.(N.S.) 1161.

129 M.—32.

From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*George H. Gordon* and *L. L. Brown,* for appellant.

*Davis & Michel* and *Paul D. Stratton,* for respondent.

HALLAM, J.

On June 5, 1911, defendant rented a building in Granite Falls to plaintiff's husband, M. H. Keegan, by written lease, for the term of one year. Plaintiff and her husband went into possession of the premises, using the same as a restaurant and dwelling. The lease contained the condition that the lessee would not assign the same and a provision that the lessor might terminate the lease for noncompliance by the lessee with any of its conditions. On February 16, 1912, M. H. Keegan assigned the lease to plaintiff, his wife. L. O. Johnson, a banker at Granite Falls, who negotiated the lease and rendered some other services for defendant in connection therewith, indorsed thereon the consent of defendant to the assignment. Plaintiff and her husband thereafter continued in possession. On March 1, 1912, plaintiff was leaning over a railing of a rear platform when the railing gave way and she fell to the ground. Her claim is that the supports of the railing were decayed, and had been decayed for some time, and she brought this action to recover damages. The jury found for plaintiff, and defendant appeals.

1. The court charged the jury that, "under the lease in question, it was the duty of the defendant, the owner of these premises, to repair them so as to keep them in reasonably safe condition during the period of tenancy," and further, in substance, that, by reason of this provision of the lease, defendant was liable, if it negligently failed to keep the premises in repair, to one injured by its negligence.

If the lease did require the defendant to keep the premises in repair, then the instruction was correct, for the rule is that, where the lessor by his lease contracts to keep the leased premises in repair and he negligently fails to do so, he is liable to the lessee and the members of the lessee's family occupying the same, for personal injuries received from a defective condition of the premises. The

action is for the wrong committed by the landlord by his negligence in failing to perform an act assumed by him, which he should know would protect them from injury if performed, or expose them to injury if not performed. The contract creates an implied legal duty on the part of the landlord toward those who are rightfully upon the premises, and a negligent violation thereof vests in them a right of action in tort against him for injuries sustained. Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289; Good v. Von Hemert, 114 Minn. 393, 131 N. W. 466; Glidden v. Goodfellow, 124 Minn. 101, 144 N. W. 428; Glidden v. Second Avenue Investment Co. 125 Minn. 471, 147 N. W. 658; Daley v. Towne, 127 Minn. 231, 149 N. W. 368. But we are of the opinion that the court was in error in instructing the jury that this lease imposed on defendant the obligation to repair. The only portions of the lease which have any bearing on this question are the following:

The lessee agrees "that any alteration, improvement or addition, that he may be permitted by said first party to make," shall be at his own expense; "that he will not make * * * any alteration * * * without the written consent of the lessor," and that the "lessor * * * may enter the said premises for the purpose of viewing the same, or making improvements and repairs at all reasonable hours."

The clause which permits the tenant to make alterations and improvements at his own expense on the written consent of the lessor, but not otherwise, apparently has no reference to ordinary repairs; but, if it can be construed as applying to repairs, it imposes no duty upon the lessor. It merely regulates the right of the tenant to make such alterations. The clause which provides that the lessor may enter for the purpose of making repairs surely gives to the lessor the right to make repairs, but just as surely it imposes no duty upon him to do so. It permits him to invade the possession of the lessee only in case he sees fit to do so. For this error in the charge a new trial must be granted. But the case is not one for judgment notwithstanding the verdict.

2. It is alleged in the complaint that the supports of the railing were in a defective and dangerous condition at the time of leasing

the premises; that the defendant knew of such dangerous condition and that plaintiff did not; that the defective condition of the railing was a latent and hidden one, and that defendant negligently and fraudulently concealed it from plaintiff. These allegations state a cause of action. These rules are well settled: When the lessor does not agree to repair, and there is no fraud or concealment as to the safe condition of the premises, and the situation is not such as to create a nuisance, the lessee takes the risk of their safe occupancy, and the lessor is under no obligation to make repairs and he is not liable to the lessee, or to those claiming under him, for injuries resulting from the defective condition of the premises. But, if there is a concealed trap or danger on the premises at the time of the leasing and its existence is not obvious but is known to the lessor and unknown to the lessee, the lessor is in duty bound to disclose it, and he is liable for negligent failure so to do, even though he makes no covenant or contract to make repairs. Harpel v. Fall, 63 Minn. 520, 65 N. W. 913; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Daley v. Towne, 127 Minn. 231, 149 N. W. 368; Moore v. Parker, 63 Kan. 52, 64 Pac. 975, 53 L.R.A. 778; Bowe v. Hunking, 135 Mass. 380, 46 Am. Rep. 471; Rhoades v. Seidel, 139 Mich. 608, 102 N. W. 1025; Anderson v. Hayes, 101 Wis. 538, 77 N. W. 891, 70 Am. St. 930; 1 Tiffany, Landlord & Tenant, § 86. There is some evidence tending to sustain the allegations of the complaint in this particular. It is not altogether satisfactory proof, but it is such that under the rule of Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958, judgment should not be ordered for defendant, particularly in view of the fact that, under the ruling of the trial court, plaintiff was led to believe she might have recovery under the terms of the lease, and apparently relied largely on that theory of the case.

3. Defendant contends that banker Johnson had no authority to consent to the assignment of the lease from plaintiff's husband to herself, and that she never became a tenant of the premises. It appears to us unimportant whether the consent was authorized or not. Under all the authorities, the rights of plaintiff were in sub-

stance the same whether she were lessee or the wife of a lessee occupying the premises with her husband under the lease. The obligation which the lessor owes to the lessee, if any obligation exists at all, inures as well to members of the family of the lessee (Good v. Von Hemert, 114 Minn. 393, 131 N. W. 466); to his guests (Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Wardwell v. Cameron, 126 Minn. 149, 148 N. W. 110); to sub-lessees (Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289); to employees (Glidden v. Goodfellow, 124 Minn. 101, 144 N. W. 428); and to all persons rightfully upon the premises upon the proper invitation of the lessee (Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289).

4. The facts as plaintiff claims them to be were all pleaded. The assignment if unauthorized does not *ipso facto* forfeit the lease, but merely gives to the lessor an option to declare it forfeited. This right of option he may assert or waive as he chooses. Randol v. Tatum, 98 Cal. 390, 33 Pac. 433; Holman v. DeLin, 30 Ore. 428, 47 Pac. 708. In this case the lessor never exercised this option. If the evidence fails to prove plaintiff to be a tenant, then it cannot fail to prove that her husband was a tenant and that she was lawfully upon the premises as his wife. The result in each case is the same.

5. It is proper to say in this connection that in no sense is an assignment of a lease and assent thereto to be regarded as a new leasing. Rees v. Lowy, 57 Minn. 381, 59 N. W. 310. The rights of the parties, so far as concerns liability for dangerous condition of the premises, are determined as of the time of the original leasing and not as of the time of the assignment.

Order reversed and new trial granted.